FRUGÉ, Judge.
This is an action for breach of a contract of insurance between Thomas Kramer and Louisiana Farm Bureau Mutual Insurance Company. Kramer had a collision insurance policy on his 1970 Chevrolet automobile with Louisiana Farm Bureau. On June 12, 1972 Kramer’s automobile was wrecked causing over $1100 worth of damages to the front end of the car. The repairs were made at Ashy Motor Company in Oakdale and were paid by Louisiana Farm Bureau. However, no repairs were made to the water pump. Soon after the *712 car was repaired the engine burnt up as a result of overheating. Kramer has sued contending that Louisiana Farm Bureau refused to allow replacement of the water pump which was damaged in the June 12th accident and that this refusal caused the subsequent damage to the car engine. The trial court rendered judgment in favor of the plaintiff in the amount of $576.05. Defendant has appealed. We affirm.
There is no dispute that Kramer’s automobile was wrecked in the June 12th accident. After the accident and pursuant to instructions Mrs. Kramer got two estimates of repair and the car was eventually-taken to Ashy Motors Company for repairs.
The estimate for Ashy Motors was made by Chester Marcantel, the paint and body man for Ashy Motors. The original estimate came to $1,149.80 and included an estimate of $20.95 for replacement of the water pump. This estimate was checked by Mr. Lee Stewart, an adjuster for Louisiana Farm Bureau. During this check, which took place at Ashy Motors in the presence of Marcantel, Stewart lined through the entry on the estimate for replacement of the water pump. This line-through forms the basis of Kramer’s claim in this suit.
After the repairs were made Mrs. Kramer drove the car to New Orleans where Mr. Kramer was hospitalized at the time. During this trip Mrs. Kramer testified that she had to stop five or six times to have water put in the radiator because the engine was overheating. When she arrived in New Orleans the car was parked in the hospital parking lot. A few days later on June 24th, Mr. Kramer was released from the hospital and the Kramers began the trip back to Oakdale. According to Mrs. Kramer the radiator had to be filled before they left New Orleans. Once the Kramers reached LaPlace the engine killed and the red light indicating that the motor had overheated flashed on. The car was towed to a service station where Mrs. Kramer was told that the car needed a new water pump. A replacement pump was obtained, placed on the car and the Kramers continued their trip.
Mrs. Kramer testified that the car did not run very well at this point. Upon reaching Gonzales the Kramers stopped to eat. The engine was stopped but would not restart. A service station attendant was called and after an inspection informed the Kramers that the engine was ruined due to overheating. This diagnosis was later confirmed after the car was towed back to Oakdale.
The issue presented appears to be a novel one in Louisiana. Counsel has not cited nor has our research uncovered a case involving a similar claim. Plaintiff has mot classified his claim but we consider it to be based upon breach of contract. Although the contract has not been introduced into evidence defendant admits that recovery should be allowed if plaintiff has proved the following:
1. The water pump was cracked or at least somehow damaged in the June 12th accident.
2. The defendant’s adjuster knew or had good reason to know that the water pump was damaged but refused to allow replacement.
3. The cause of the engine damage was the damaged water pump.
These standards were used by the trial judge and we deem them to be appropriate. There is a breach of contract only if (1) the water pump was damaged in the June 12th accident and (2) the insurance company (through its agent adjuster) knew or should have known of the damage but refused to accept responsibility for the repairs. The insurance company is liable for the damages to the engine only if those damages were a result of its breach.
Louisiana Farm Bureau contends on appeal that the plaintiff failed to carry his burden of proof with regard to all three of *713 the standards set out above and that the trial court committed manifest error in finding for the plaintiff. We will discuss the contentions in order.
Louisiana Farm Bureau first argues that there is no proof that the water pump was damaged in the June 12th accident. The trial judge based his finding on the fact that the car was not driven between the time of repair and the trip to New Orleans and the fact that Mrs. Kramer had to stop five or six times to add water to the radiator on that trip. Appellant relies on the testimony of the Ashy Motors mechanic, Chester Marcantel. Marcantel testified that he did not see anything wrong with the water pump and that he tested it after completion of all the repairs and could find nothing wrong. Mar-cantel explained that the only reason he had included replacement of the water pump on the original estimate was that the water pump was often damaged where there was front end damage of the nature sustained by the Kramer car.
Appellant contends that the trial court was erroneous in stating that Marcantel on cross examination “revealed that it was his opinion that the water pump was defective and should have been replaced.” We agree with appellant that there is no such indication in Marcantel’s testimony. Nevertheless, we cannot say that the trial court erred in finding that the water pump was damaged as a result of the June 12th accident. There is sufficient evidence in the record to support this finding. Mrs. Kramer testified that on the first trip after the car was repaired she had to stop to put water in the radiator five or six times. The mechanic at LaPlace stated that she had a broken water pump. In view of the fact that a problem with the water pump manifested itself so soon after the repairs were completed it is reasonable to conclude that the water pump was damaged in the June 12th accident.
Appellant introduced at trial a service station receipt showing that a fan belt was placed on the Kramer car after it got to New Orleans. Appellant contends that the car could overheat and burn up due to a faulty fan belt. However, the fact that the water pump on the Kramer car was bad when they reached LaPlace tends to show that the overheating problem was related to a problem with the water pump. Also, as noted by the trial judge, there would have been no need for Mrs. Kramer to add water to the radiator if the problem had simply been with the fan belt. We conclude that there was sufficient evidence for the trial court’s finding that the water pump was damaged in the June 12th accident.
Appellant contends that even if the water pump was damaged in the June 12th accident its adjuster, Lee Stewart, had no knowledge that the pump was bad and that without proof of this knowledge recovery must be disallowed. Appellant’s contention is based on the following. Marcantel testified that the only reason replacement of the water pump was specified on the original estimate was that the water pump was often damaged where there was significant front end damage as had been sustained by the Kramer automobile. He had no actual knowledge of whether the pump was damaged or not. When he and the adjuster Stewart were going over the estimate he told Stewart that he did not know for sure whether the pump had sustained any damage. It was at this point that Stewart lined through the entry for replacement of the water pump on the estimate.
Marcantel told Stewart that he would not be able to tell whether the pump was damaged until the other repairs were completed and the pump tested. Stewart told Marcantel to test the pump when the repairs were completed and further told him to replace the water pump if he found it to be bad. The indication was that Louisiana Farm Bureau would pay for replacement of the pump if it proved defective even though Stewart scratched through the entry on the original estimate. Marcantel testified that he did later test the water *714 pump, found that it was not damaged, and consequently did not replace it. His testimony substantiates Stewart’s that he was to test the water pump and that if it was damaged Louisiana Farm Bureau would pay for the replacement.
The trial judge was of the opinion that the mechanic Marcantel did not want to testify that he had left a defective part on the Kramer automobile. Since replacement of the pump was on the original estimate it is obvious that Marcantel thought the pump should be replaced. This judgment was overruled by Stewart, the adjuster for Louisiana Farm Bureau. The trial judge was further of the opinion that since Stewart had discussed the water pump with Marcantel he knew or should have known that it was damaged.
While this court agrees that appellant has elicited strong evidence to show there was no knowledge of defect on the part of Stewart we can overrule the findings of the trial court only upon a showing of manifest error. The standard has been set in Canter v. Koehring Company, 283 So.2d 716 (La.1973) as follows:
“When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.” 283 So.2d at 724.
We cannot say that the finding of the trial court was manifestly erroneous. We believe there is evidence in the record to support a finding that the water pump should have been replaced, that Marcantel knew it should have been replaced and that Stewart knew or at least should have known that it should be replaced.
We now turn to appellant’s final specification of error. Appellant contends that the trial court erred in finding that the engine damage was a direct result of leaving the damaged water pump on the car. He contends that there was no competent proof to show what caused the breakdown in Gonzales. Furthermore, appellant contends that since the breakdown occurred after a new water pump was placed on the car then the damaged water pump could not have caused the damage.
We think there was sufficient evidence upon which the trial court could reasonably conclude that the engine damage was caused by the defective pump. The evidence shows that the Kramer vehicle had been driven very little after the repairs prior to the trip to New Orleans. Mrs. Kramer had to put water in the car several times on the way to New Orleans. As noted by the trial judge this shows that water leakage was the cause of the overheating rather than a problem with the fan belt as suggested by defendant’s counsel. Furthermore, the fact that a new water pump was needed at LaPlace corroborates the fact that the overheating was due to the damaged water pump.
Finally, we agree with the trial judge’s conclusion that by the time the new water pump was placed on the car the engine had overheated and thus the new pump was too late. The car did not run well after the overheating at LaPlace. Once it was *715 stopped at Gonzales it would no longer run. The evidence is sufficient to establish that the damage occurred prior to placing the new pump on the car.
For the reasons assigned, the judgment of the trial court is affirmed. Costs will be borne by appellant.
Affirmed.
MILLER, J., dissents and assigns written reasons.